(No. 3107—■■■■■)

FREDERICK H. BARTLETT, AS TRUSTEE UNDER THE PROVISIONS OF A TRUST AGREEMENT, DATED JANUARY 2, 1923 AND KNOWN AS THE FRED'K H. BARTLETT REALTY CO., TRUST, CHICAGO TITLE AND TRUST COMPANY, A CORPORATION, AS TRUSTEE, UNDER THE PROVISIONS OF A TRUST AGREEMENT DATED OCTOBER 29, 1928 AND KNOWN AS TRUST No. 21768, AND FRED'K H. BARTLETT COMPANY, A COMMON LAW TRUST, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1939.*

*Rehearing denied November 14, 1939.*

MARK W. BEMIS and HADLEY & LEREN, for claimants.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

JUSTICE C. H. LINSCOTT delivered the opinion of the court:

The complaint in this case charges that Frederick H. Bartlett as Trustee under the provisions of a trust agreement dated January 2, 1923, and known as the Fred'k H. Bartlett Realty Company Trust, and the Chicago Title and Trust Company a corporation as trustee under the provisions of a trust agreement dated October 29, 1928 and known as trust No. 21768 and Frederick H. Bartlett Company a common law trust under the provisions of respective trust agreements, are nominal claimants and the actual claimant herein is Frederick H. Bartlett Company. The Bartlett Company was engaged in Real Estate business primarily as a sub-divider and developed many subdivisions in the counties of Cook, DuPage and Lake in the State of Illinois and other subdivisions in Wisconsin, Indiana and Michigan.

The complaint charges that on October 29, 1928 the Chicago Title and Trust Company a corporation as trustee, was the legal owner and was lawfully possessed of certain land containing 69 acres more or less and described as follows:

The North East Quarter of the North East Quarter and that part of the North East Quarter of the North West Quarter, lying East of Joliet Road in Section Twenty-three (23), Township Thirty-nine (39) North, Range Ten (10) East of the Third Principal Meridian, DuPage County, Illinois.

The trustee held the legal title to this property for the use and benefit of Frederick H. Bartlett Company, one of the claimants. It is further charged that in the year of 1928 the Frederick H. Bartlett Company subdivided the tract of land above described into a subdivision known as Roosevelt Hills Addition comprising 13 blocks containing 290 lots of various sizes which subdivision is located entirely within the corporate limits of the village of Glen Ellyn, DuPage County, Illi-

nois and the proof shows is approximately 22½ miles west of the city of Chicago. The north boundary of this subdivision is the Illinois State Bond Issue Route No. 330 also known as Roosevelt Road and is directly connected with Lincoln Highway on United States Route No. 30 at a point west of Geneva, Illinois.

The East boundary of this subdivision is known as Illinois Route No. 53 which crosses the Roosevelt Road, and the West boundary of this addition is the Joliet Road, a north and south Public Highway with a macadam surface maintained by the town of Milton, DuPage County, Illinois and the south boundary of the Roosevelt Hills addition is the South corporate limits of the Village of Glen Ellyn.

It is charged that this tract of land was ideally situated for the development of a first class subdivision containing some lots platted for business, located along Route 53 and 330 and also for residental purposes. That after the subdivision of the above described premises, the claimant Frederick H. Bartlett Company spent considerable money in advertising these lots for sale and the employment of a sales force. They did some grading and improving streets and made other expenditures that would increase a demand for these lots. A considerable number of the lots were sold on real estate contracts until the improvements made upon Route 53 and hereinafter referred to.

That on and subsequent to November 2, 1933, the Chicago Title and Trust Company, a corporation, as trustee under the provisions of a trust agreement dated October 29, 1928 and known as trust No. 21768, was the legal owner and lawfully possessed certain premises described in the complaint. It is charged in the complaint that the legal title of said premises was vested in Frederick H. Bartlett, as trustee and the Chicago Title and Trust Company as trustee and that they held title to respective lots for the use and benefit of said Frederick H. Bartlett Company. The object and purpose of the trust agreement does not appear in the pleading but sufficient evidence appears to show that part of the premises are held in trust.

It is charged that about the first of November, 1932 pursuant to an Act of the General Assembly of Illinois, the State Highway Department built a by-pass under the Roosevelt Road on what is known as State Highway No. 53 in front of

some of these premises and along the eastern boundary thereof beginning at a point approximately 500 feet south of the North East corner of the subdivision which point was at the intersection of routes 53 and 330, so that the said Route 53 was depressed and lowered on a certain grade below the level of certain of the lots to a depth of approximately 22 feet at the extreme North lot and the Highway Department also did erect an iron railing on top of and along the retaining wall adjoining said Highway and directly in front of a part of the premises hereinbefore referred to.

It is charged that because of this construction the value of the entire subdivision known as Roosevelt Hills Addition was greatly damaged and destroyed and the value of the lots facing route 53 and platted for business purposes was entirely destroyed so that said lots had no value whatsoever for business or residential purposes and there is no means of ingress or egress to and from said lots facing said route 53 from the intersection of the said route 53 with said route 330, south to a point where the said route 53 reaches the normal grade level; that the value of said lots facing Route 330 has been destroyed for business purposes and are not suitable for residential purposes due to their location upon a four lane arterial highway and due to the depressing of Route 53 as aforesaid and that the value of the lots located south of the said Route 330 and west of said Route 53 so platted for residential purposes, was nearly destroyed due to the destruction and loss of value of the business lots adjoining and facing said Routes Nos. 53 and 330.

That since the construction of Route 53, many of the persons purchasing the lots in Roosevelt Hills Addition have failed to make the payments as therein specified and have allowed their rights to become delinquent and forfeited due entirely to the loss in valuation of the said premises by virtue of the construction and depression of said Route 53.

That since the construction of this under-pass, it is charged that the Frederick H. Bartlett Company has been unable to sell any of the lots remaining unsold prior to the construction of Route 53 and has been unable to sell any of these lots sold by contract previous to construction of Route 53.

The complaint charges damages to the extent of $50,000. Considerable evidence was taken and the court viewed these premises personally. No buildings of any kind have been put

upon either of the lots described, and although the subdivision was made several years ago, no business property has been erected. It is a matter of common knowledge that the Country has gone through a great business depression and these premises as well as all other premises have suffered accordingly. There is much area in DuPage County that has been platted and many of these lots so platted have not been sold and this is true in areas that have joining underground Highway passes and areas that do not join underground Highway passes. As said above the object and purpose of the Trust Agreement does not appear but from the information averred in the complaint the Trust Agreement apparently was executed prior to the time of the construction of Route 53 and the question of whether or not the Trust Agreements referred to were made for the purpose of securing the payment of debts or obligations out of the sale of these lots, is one of conjecture.

The testimony shows that these premises are about a mile and a half from Glen Ellyn. Glen Ellyn is a strictly residential village and from 85 to 90% of its working population commute to the city of Chicago and are executives or semi-executives in Chicago Business Institutions. Glen Ellyn is approximately 22½ miles from Chicago. The rail facilities between Glen Ellyn and Chicago are the Aurora and Elgin and the Chicago and North Western with 165 trains a day. Roosevelt Road, St. Charles Road and North Avenue are main highways between Chicago and Glen Ellyn. When the testimony was taken it was stipulated that claimant's claim should be limited to the following described property:

Lots 31-32-33-35-36-38-39-40-41-42-43-44-45-46 in Block 1.
Lots 1-2-6-7 and 9 in block 5.

Roosevelt Hills subdivision of the North East Quarter of the North East Quarter and part of the North West Quarter of the North East Quarter of Section 23, township 39 North range 10 east of the 3rd principal meridian, DuPage County, Illinois. It was also stipulated that such title to said lots 31, 32, 33, 35, 36, 38, 40, and 44 in Block 1 and lots 6 and 7 in block 5 is vested in the claimant, Frederick H. Bartlett, trustee, and Title of said lots 39, 41, 42, 43, 45 and 46 in Block 1 and lots 1, 2 and 9 in block 5 Roosevelt Hills Addition is vested in the claimant Chicago Title and Trust Company as trustee and that the beneficial interest in said amounts is held

and retained by claimant Frederick H. Bartlett Company, a common law trust. The improvement on Route 53 as it passed under Route 6 or Route 330 at the South line of Roosevelt Road was 18 feet and it gradually came to a grade at a distance of 440 feet South of the South line of Roosevelt Road and there is a similar construction on the North side of Roosevelt Road. On either side of Route 53, concrete walls from 12 to 14 inches thick at the top, 42 feet apart between the curb and 44 feet between the two walls, were constructed; and a bridge on Roosevelt Road across Route 53 of reinforced construction with four lanes of concrete 40 feet wide was also constructed; and on either side of the travelled portion of the Highway, a sidewalk and a hand rail were built.

Bryant Avenue is Route No. 53. At a point approximately 800 feet West of Route 53 on what is known in this subdivision as Nicoli Way, a concrete road was built South from the main Highway on Roosevelt Road, across Taft Avenue and East on Pershing Street to Bryant Highway. Lots 31, 32, 33, 35, 36, 38 and 40 in Block 1 are on the South Half of Block 1 and front on Taft Avenue and each are 50 feet wide and approximately 129 feet in depth. They extend from a public alley way southerly to Taft Avenue.

Lot 44 in Block 1 fronts on Bryant Avenue and is 25 feet in width and 110 feet in depth between the wall on the West side of Bryant Avenue and at the East front of this lot there is a strip some 20 or 25 feet in width. The title of the last named lot is vested in Frederick H. Bartlett, trustee and title to lots 39, 41, 42, 43, 45 and 46 in Block 1 and lots 1, 2 and 9 in block 5 in this said addition is vested in the Chicago Title and Trust Company. Block 5 lies immediately south of block 1 and fronts on said Taft Avenue. Taft avenue is 66 feet wide and the north portion of Block 5 is approximately 160 feet from the South side of the Roosevelt Road Highway. Lots 1 and 2 in block 5 are approximately 66 feet wide and 116 feet in depth and front in an easterly direction. Lot 9 is approximately 56 feet in width, 134.9 feet in depth and faces a northerly direction. Neither the lots fronting on Bryant Avenue or Route 53 nor other lots in this Addition have been improved. Nicoli Way was improved by concrete Highway at the cost of the people of the State of Illinois and it must be admitted that the value of the lots along the western end of Blocks 1 and 2 have suffered little if any in damages by construction of the underground pass hereinbefore referred to.

Charles W. Boardman was called as a witness on behalf of the State. He testified he resided at 731 Highland Avenue, Glen Ellyn, Illinois; that he had lived in Glen Ellyn since 1924 and immediately prior thereto he had lived in Chicago. He had a license as Real Estate Broker and had been in the Real Estate business in Glen Ellyn for 12 years and had handled over 100 properties. He testified the highest and best use of these properties was for subdivision purposes. He was familiar with the work done by the State on Route 53. He knew of no sales in this particular vicinity since or before January 3, 1932 except what had been sold by the LaSalle Realty Company. He testified that the fair market value of all of these lots is $5.00 a front foot. He also testified that lots north of the subdivision known as the Roosevelt Garden Home Site had been offered at figures from $200.00 a lot upwards for 50 feet lots where there were no improvements and that lots immediately north were listed for sale in his office during 1928 and 1929 at prices of $200.00 and upward. That he did not take the trouble to list them for the reason that there was no demand for lots in that vicinity. While in some instances this witness' testimony was perhaps not technically correct, considering his experience in the sale of lots in this vicinity and his knowledge of values, we would not be justified in ignoring his testimony. This witness also had an opinion as to those lots bordering on Nicoli Avenue and that these lots had been increased somswhat in value because Nicholi Avenue which is paved with concrete, brought them closer to the main travelled Highway on a road that had been paved. Evidence was introduced by the claimant and Hugo W. Celander who had been in the employ of the Frederick H. Bartlett Company for 21 years selling these subdivision properties. He testified that he was familiar with the several lots above referred to and his attention was directed to the particular lots in question. He testified that lots 41, 42 and 43 in Block 1 were sold on January 12, 1930 for the sum of $6,775.00 and Lot 44 in Block 1 was sold on April 18, 1931 for $4,000.00 and Lots 45 and 46 in that same block were sold on October 1, 1930 for $7,000.00. They were sold on contracts but the contracts were not carried out and were evidently cancelled after the year of 1932. Other sales for groups of lots were made for the sum of $40,000.00.

Roy Spaulding also testified. He lived at Glen Ellyn and had been in the Real Estate business for 33 years in Glen

Ellyn. He had built 198 houses in Glen Ellyn, bought the vacant property and had opened up about six subdivisions in that vicinity. These subdivision contained from 10 up to 250 lots, and was mostly since 1918. Generally speaking this witness was of the opinion that these lots on Bryant Avenue were worth $30.00 per front foot cash in 1932. This was the value before the construction improvement and that after the construction improvement, these lots for business purposes were valueless. It was his opinion that there had been a depreciation of the value of Lots 1 and 2 in Block 5 of 25% to 50%. Lot 2 in Block 5 would be a 50% loss on a basis of $30.00 per front foot and lots 31, 32, 33, 35, 36, 38, 39 and 40 prior to the separation of Grade would have sold for at least $10.00 per front foot and that after the separation of the Grade these properties were depreciated 25% that is from $10.00 a front foot to $7.50 per front foot.

Joseph Wagoner also testified for the claimant. He was a Real Estate Broker who lived at Glen Ellyn and had been in the Real Estate business since 1915 selling residential and subdivision property. He said that these properties under discussion were approximately a mile and a half from the business section of Glen Ellyn; that he had examined this property for the purpose of testifying and was familar with all the circumstances. He was of the opinion that the lots along Bryant Avenue prior to the construction of the improvement were worth $35.00 a front foot because these had been sold for business purposes and that after the construction of the improvement, they were ruined as far as business property was concerned.

We have gone into the evidence sufficiently to show the general trend of the proof now before the court and from an examination of these premises and the surrounding premises including premises located near Chicago and also premises near to Glen Ellyn, and we are strongly impressed with the fact that these lots and lots in this vicinity back in 1928 and 1929 were sold at high and speculative values and it is difficult for us to see how lots 6, 7 and 9 in Block 5 have been affected by this improvement and it is also difficult for us to see in what degree if any, lots 31, 32, 33, 35, 36, 38, 39 and 40 have been greatly affected. The more reasonable view, it seems, would be that these lots are just a part of a large area that has been subdivided, are unimproved and are on the same

basis as much other similar property in that locality now; there being no residents for quite an area close to lots 41, 42, 43, 44, 45 and 46 upon which no improvements were ever made, these having been zoned for business purposes, these lots never had any value for business purposes except perhaps a speculative value. Zoning country property for business in unimproved localities and on ordinary farm land that does not contain population, does not of itself create values which a court can recognize. If there had been improvements upon this property or if settlements had been made in these vicinities where there would be a use for grocery stores, meat markets, garages and the like, this court would look at this problem in a different way and what has been said of the other lots also applied to Lots 1 and 2 in Block 5.

We are of the opinion that the testimony introduced by the State is fair and reasonable and this testimony is also considered in the light of a personal inspection of these premises.

An award, therefore, on the grounds hereinbefore specified, is denied.